PERCY JACKSON, as Trustee in Bankruptcy of UNITED ENGINEERING AND CONTRACTING COMPANY, Appellant, *v.* THE STATE OF NEW YORK, Respondent.

Fourth Department, July 1, 1924.

Canals — Barge canal — claim against State for damages based on increased cost of excavating and for interest on certain items — basis of claim is that State represented material to be excavated as sand and gravel, although it knew that it was hardpan — finding of fact of misrepresentation sustained — State liable for increased cost of excavation — provision in contract exempting State from liability for misstatements of fact does not apply in case of willful misrepresentation — claimant entitled to interest on amount allowed for excavation caused by slide from date of presentation of claim — interest not allowable on amount allowed for increased cost of excavation — damages — rule of damages for increased cost of excavation is difference between value of excavating material shown in contract and excavating material found — basis of claim for increased cost is not tort but breach of contract.

The findings of fact by the Court of Claims on a claim presented for damages based on the increased cost of excavating material under a Barge canal contract, on the theory that the plans upon which the contract was made provided for the excavation of sand and gravel or loose material, whereas in fact the material excavated was hardpan or hard packed material requiring different tools and more expense to excavate, to the effect that the State, with knowledge that the material which was to be excavated was hardpacked material or hardpan, stated in its plans on which the contract was based that the material was loose sand and gravel, are sustained.

In construing the contract the same rules of construction are applicable as between individuals and the Court of Claims should have found as a conclusion of law that the claimant, the trustee in bankruptcy of the contractor, is entitled to recover for the extra cost of excavating the hardpan material.

A provision in the contract to the effect that the contractor had made investigation and research and that it was not relying upon the estimate of the quantities or other information prepared by the State and that it would make no claim against the State because any of the estimates made by the State might prove erroneous, does not relieve the State from a willful misrepresentation as to the

character of the material to be excavated, but only applies where there has been an innocent mistake, for a party cannot by a misrepresentation of a material fact induce the other party to the contract to enter into it to his damage and then protect himself from the legal effect of such misrepresentation by inserting in the contract a clause to the effect that he is not to be held liable for the misrepresentation which induced the other party to enter into the contract.

The claimant is entitled to interest on the amount allowed it for excavating material that slid into the canal, from the date of the presentation of the claim, since the contract provided for the rate to be paid and the amount was, therefore, capable of computation.

The claimant is not entitled to interest on the amount allowed to him by the Appellate Division for increased cost of excavation, since the State could not have determined what was due either by computation alone or by computation in connection with the established market value or other generally recognized standards.

The proper measure of damages for the increased cost of excavation is the difference between the value of excavating the material shown in the contract plans and the value of excavating the material found, and the Court of Claims was right in applying that rule.

The fact that claimant relied upon a willful misrepresentation of facts in presenting his claim for increased cost of excavation does not deprive the Court of Claims of jurisdiction on the ground that the claimant is seeking to recover for a tort, for although fraudulent misrepresentations constitute a tort, the claimant relied upon a breach of contract and not on tort.

APPEAL by the claimant, Percy Jackson, as trustee, from so much of a judgment of the Court of Claims, entered in the office of the clerk of said court on the 6th day of November, 1922, as refused to allow to claimant $117,390.90 for increased cost of excavation, and also from a refusal to allow interest on three items for which judgment was awarded to claimant, and also from an order dated October 26, 1922, amending and correcting certain findings of fact.

*Kellogg & Rose [Franklin Nevius, Abram J. Rose, Asa B. Kellogg and T. Tileston Wells of counsel], for the appellant.*

*Carl Sherman, Attorney-General [Clifford Couch, Deputy Attorney-General, of counsel], for the respondent.*

HUBBS, P. J.:

On November 27, 1908, the claimant's predecessor in interest entered into a unit price contract with the State for the construction of a section of the Barge canal four and eighty-four one-hundredths miles in length. The contract was known as Barge Canal Contract No. 40. The claimant, after the completion of the contract, duly filed a claim for damages against the State. The Court of Claims allowed certain items of the claim, but refused to allow interest on such items. From the part of the judgment refusing to award interest the claimant has appealed. The Court of Claims also refused to allow an item of said claim for $117,390.90 damages

on account of the increased cost of excavating 4,450 feet between stations 6078 + 50 and 6123. From that part of the judgment the claimant also appeals. The grounds of the appeal will herein be referred to in the inverse order.

The claimant contends that his claim for damages because of the increased cost of excavating 4,450 feet should have been allowed because the plans, upon which the contract with the State was based, were false in that they showed the material to be excavated to be soft material, easy to excavate, when, in fact, the material consisted of hardpan, or a "hard compact material." He also claims that the State showed upon such plans only a part of the information which it possessed in regard to the soil to be excavated, and that it suppressed and failed to show upon said plans the result of investigations which it had made. He claims that the State, from investigations made, knew that the soil to be excavated was hardpan, or a hard compact material, which it would cost much more to excavate than the material shown on the plans. It is contended that the State, by suppressing such information and indicating upon the plans that the material was soft and easy to excavate, was guilty of misrepresentations and fraud which entitles claimant to recover.

The Court of Claims found all of the material facts as contended for by the claimant. No opinion was written in the Court of Claims, but it found as a conclusion of law that the claimant was not entitled to recover. Its conclusions of law were, *first*, that the failure of the State to disclose its information to the effect that the material to be excavated was different from that indicated on the plans was not a fraud on the claimant's predecessor, and *second*, that claimant cannot recover because of paragraph 10 of the contract, which provides that the contractor has satisfied himself by his own investigation regarding all conditions and that his conclusion to execute the contract is based upon such investigation and not upon information imparted by the State.

The Court of Claims found the following facts: That part of the drawings of the contract were sheets 9 and 10; that they were shown to the claimant's predecessor as information upon which to make its bid; that they showed that wash borings had been made and that the material to be excavated consisted of " sand, sand and clay, sand and gravel, red sand, black sand, gravel filling, rock, sand and stone; " that said information, with the plans and drawings, and bottles containing sand and gravel stated to have been taken from the wash borings, was the only information given to the claimant's predecessor; that the State had in its possession information as to rod soundings and wash borings made some years before; that they showed the material in question to be " hard

and firmly compacted, that it was composed of sand, clay and gravel or small boulders in one mass;" that the State failed to reveal to bidders any information in its possession as to the material to be excavated except as shown on sheets 9 and 10 and the material in bottles; that there was time after the advertisement for bids and the submission of same for the claimant's predecessor to make some examination of the site but not time to make a complete investigation of the sub-surface conditions; that the claimant's predecessor relied upon sheets 9 and 10 in making its bid; that it provided proper tools and machinery to excavate the materials shown on sheets 9 and 10; that such tools and machinery would not excavate the material found and other tools and machines were provided and the material had to be blasted before it could be removed " because said material was hard and compact and of a different character from that shown on sheets nine and ten of the contract plans;" that the investigation made by the State in 1895, 1900 and 1906 showed the existence of " hard compacted material " while sheets 9 and 10 showed only sand, clay and gravel; that the information given on sheets 9 and 10 constituted a misrepresentation of the conditions actually existing; that the claimant's predecessor was induced to enter into the contract by such misrepresentation; and that the increased cost of excavating the material found over what it would have been if the material had been as represented was one dollar and ten cents per cubic yard.

The findings of fact made by the Court of Claims contain all the elements of actionable fraud. We are urged by the State to disapprove and reverse such findings upon the ground that they are unsupported by the evidence or against the weight of the evidence. We think there is evidence to sustain the findings of fact and that such findings are not against the weight of the evidence. We think also that the findings of fact required the Court of Claims to find as a conclusion of law that the claimant is entitled to recover for the item in question.

In construing the contract in question the same rules of construction are applicable as between individuals. (*People ex rel. Graves* v. *Sohmer*, 207 N. Y. 450.)

In *Atlanta Construction Co.* v. *State* (103 Misc. Rep. 233) it is said: " The State is called upon, in contracting with its citizens, to set a standard which for fairness, justice, equity, honesty and plain, frank statement of its purpose, without subterfuge or circumlocution, shall be beyond all criticism as being in any way possible of deception."

The State, with knowledge that the material in question to be excavated was " a hard compact mass " of the nature of hardpan;

difficult and expensive to excavate, represented on the plans upon which the claimant's predecessor's bid was based that the material consisted of " sand, sand and clay, sand and gravel, red sand, black sand, gravel filling, rock, sand and stone." The material shown on the plans would be easy to excavate and much less expensive than the material found. The findings of fact disclose that the State, knowing the material to be excavated consisted of a " hard compact mass," represented by its plans that it consisted of an " entirely different " kind of material, one which would be easy to excavate.

It takes no argument to demonstrate that such conduct on the part of an individual would constitute misrepresentation and fraud. It was more than a failure to state all the facts in the State's possession. It was a representation of a fact entirely contrary to the actual fact known by the State when the representation was made. Unless the State is protected by clause 10 of the contract from the effect of its misrepresentation, the claimant is entitled to compensation for the damage suffered because of such misrepresentation. Clause 10 of the contract reads as follows:

" 10. The Contractor agrees that he has satisfied himself by his own investigation and research regarding all the conditions affecting the work to be done and labor and material needed, and that his conclusion to execute this contract is based on such investigation and research, and not on the estimate of the quantities or other information prepared by the State Engineer, and that he shall make no claim against the State because any of the estimates, tests or representations of any kind affecting the work made by any officer or agent of the State, may prove to be in any respect erroneous."

A party to a contract cannot, by misrepresentation of a material fact, induce the other party to the contract to enter into it to his damage and then protect himself from the legal effect of such misrepresentation by inserting in the contract a clause to the effect that he is not to be held liable for the misrepresentation which induced the other party to enter into the contract. The effect of misrepresentation and fraud cannot be thus easily avoided. If it could be the implied covenant of good faith and fair dealing existing in every contract would cease to exist. (*Brassil* v. *Maryland Casualty Co.,* 210 N. Y. 235.)

In the case of *Bridger* v. *Goldsmith* (143 N. Y. 424) Judge O'BRIEN wrote: " I assume that there is no authority that we are required to follow in support of the proposition that a party who has perpetrated a fraud upon his neighbor may, nevertheless, contract with him in the very instrument by means of which it was per-

petrated, for immunity against its consequences, close his mouth from complaining of it and bind him never to seek redress. Public policy and morality are both ignored if such an agreement can be given effect in a court of justice. The maxim that fraud vitiates every transaction would no longer be the rule but the exception. It could be applied then only in such cases as the guilty party neglected to protect himself from his fraud by means of such a stipulation. Such a principle would in a short time break down every barrier which the law has erected against fraudulent dealing."

The principle that a party to a contract cannot shield himself from his misrepresentations in inducing the other party to enter into it, by inserting a clause like the clause in question, has been enforced in this State and in other jurisdictions in actions between individuals and between individuals and the State and municipalities. (*McGovern* v. *City of New York*, 202 App. Div. 317; affd., on this point, 235 N. Y. 275; *Atlanta Construction Co.* v. *State, supra*; *Bridger* v. *Goldsmith, supra; United States* v. *Atlantic Dredging Co.*, 253 U. S. 1; 13 C. J. 420.)

A contract to take a thing with all faults does not mean that it is to be taken with all frauds. (*Schneider* v. *Heath*, 3 Camp. 508; *Shepherd* v. *Kain*, 5 B. & Ald. 240.) " A person ought either to be silent or to speak the truth, and, in case he spoke at all, was bound to disclose the real fact." (*Fletcher* v. *Bowsher*, 2 Stark. 561.)

If paragraph 10 of the contract does not protect the State from its misrepresentations, the contract stands as though it did not contain such paragraph. If the contract had not contained paragraph 10 it would be clear that the State would be liable for its misrepresentations. (*Faber* v. *City of New York*, 222 N. Y. 255; *Hollerbach* v. *United States*, 233 U. S. 165; *Christie* v. *United States*, 237 id. 234; *United States* v. *Smith*, 256 id. 11.)

It may be conceded that paragraph 10 of the contract would afford protection to the State on a claim for damages because of an innocent mistake in the plans upon which bids were received. If the State had believed the material to be excavated was as indicated on sheets 9 and 10, and had not had in its possession other information which disclosed that the material was different from that shown on said sheets, then there might not be any liability on the part of the State because the material actually found was different from that which the State, upon all the information which it had and disclosed, honestly believed it to be. In the case of *Foundation Company* v. *State of New York* (233 N. Y. 177) the contractor sought to recover for the increased cost of excavating to bed rock because the boring sheet, not made a part of the contract but shown to the contractor for the purpose of enabling it to make

up its bid, indicated that the bed rock was nearer the surface than it proved to be. It was held that no recovery could be had because the boring sheet was not a part of the contract, and if the bidder relied upon the boring sheet it did so at its own risk, as there was no bad faith, concealment of information, or misrepresentation, but an honest mistake on the part of the officers of the State.

In the instant case there are specific findings of fact that the State disclosed part of its information indicating that the material to be excavated was easy to excavate but suppressed the fact that its investigations indicated that the material to be excavated consisted of a hard, compact mass, a great deal more expensive to excavate. It represented by its plans one condition when it had information of an entirely different condition. The *Foundation Company* case is not an authority for holding, under the facts in this case, that a recovery cannot be permitted. The other cases relied upon by the respondent are similar to the *Foundation Company* case. The following were all cases where there was no misrepresentation or suppression of information: *Simpson* v. *United States* (172 U. S. 372); *Pearson & Son, Inc.,* v. *State* (112 Misc. Rep. 29); *Snare & Triest Co.* v. *City of New York* (191 App. Div. 184).

The item in question should have been allowed by the Court of Claims.

The contract provided that the claimant's predecessor should remove all material from the canal caused by slides and caves when directed so to do by the engineer. It also provided that when slides and caves were not caused by the negligence or delay of claimant's predecessor it should be paid seventy-eight cents per cubic yard for removing the material. The claimant's predecessor removed material from the canal under those provisions of the contract. The engineer's estimate did not include the expense of such removal. The Court of Claims found the amount of material so removed was 21,181 cubic yards and allowed claimant therefor seventy-eight cents per cubic yard, the contract price, amounting to $16,521.18, but refused to allow interest thereon from the date of the presentation of the claim. We think the claimant was entitled to recover interest on this item. The work was done according to the terms of the contract at the contract price. (*Faber* v. *City of New York,* 222 N. Y. 255; *Sweeny* v. *City of New York,* 173 id. 414; *Blackwell* v. *Finlay,* 233 id. 361.) Interest upon the item of $15,600 awarded should have been allowed, as it was of the same nature.

Interest was properly disallowed upon claim 16, upon which an award of $15,298.50 was made. Interest cannot be allowed upon

the item of $117,390.90, allowed by this court. The question of interest on those two items is controlled by the decision in *Faber* v. *City of New York (supra).* The State could not "have determined what was due, either by computations alone or by computation in connection with established market values, or other generally recognized standards."

The respondent contends that the rule of damages adopted by the Court of Claims in fixing one item of claimant's damages at $117,390.90 was erroneous. We think the proper measure of damages is the difference between the value of excavating the material shown in the contract plans and the value of excavating the material found. That was the rule of damages applied by the Court of Claims. (*Stewart & Co., Inc.,* v. *State,* 121 Misc. Rep. 827; *McGovern* v. *City of New York,* 202 App. Div. 332; *Wood* v. *Dudley,* 188 id. 136.)

We cannot agree with the argument of the respondent that the Court of Claims did not have jurisdiction to make an award on the claim for $117,390.90 because it was a claim based upon fraud and, therefore, a tort, of which the court did not have jurisdiction. It is true that the claimant sought to recover his damages caused by a representation which was false, but that did not make it a claim in tort. The claimant never knew that the State had in its possession information indicating that the material to be excavated was different from that stated on the plans until after the contract had been completed. He could then file his claim to recover upon an implied warranty, setting up the facts constituting the misrepresentation. That is just what the claimant did. His claim states that it is for " damages for breaches of said contract." Such a claim would not be in tort, although the facts might have justified a tort action. (*Wood* v. *Dudley, supra; United States* v. *Atlantic Dredging Co., supra,* 12; *McGovern* v. *City of New York,* 202 App. Div. 317; affd., 235 N. Y. 275.)

The conclusions of law of the Court of Claims, Nos. 2 and 3, are disapproved, and judgment is directed for the claimant upon its claim for $117,390.90, without interest. Judgment is also directed for the claimant for interest upon the item of $16,521.88, also for interest upon the item of $15,600. The other part of the judgment appealed from is affirmed, with costs to the appellant. The appeal from the order dated October 26, 1922, is dismissed, without costs.

All concur.

Conclusions of law Nos. 2 and 3 are disapproved and judgment is directed for the claimant upon its claim for $117,390.90 without

interest. Judgment is also directed for the claimant for interest upon the item of $16,521.88; also for interest upon the item of $15,600. The other part of the judgment appealed from is affirmed, with costs to the appellant. The appeal from the order dated October 26, 1922, is dismissed, without costs.